UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARRY W. MINER,

                Plaintiff,                    Case No. 1:21-cv-11192

v.                                      Honorable Thomas L. Ludington
                                        United States District Judge
OGEMAW COUNTY ROAD COMMISSION
and PATRICK J. REINKE,

                Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE WITNESSES, AND DIRECTING PLAINTIFF TO CORRECT DISCLOSURE

At some point Defendant Ogemaw County Road Commission ("Ogemaw") installed a drain culvert under Sage Lake Road. Plaintiff believes that the culvert diverts water onto his land; Defendants believe that it merely allows water to flow along its natural course under the highway. Nothing in the record reflects the culvert's purpose: where Ogemaw intended the water to go when it reached Plaintiff's property.

Plaintiff alleges that he blocked the culvert to prevent it from flooding his house and land, and that Ogemaw opened it back up and then sought criminal charges against him for destruction of government property. He also contends that the culvert still floods his land and is therefore a taking. Ogemaw contests that the flooding is a taking.

Originally alleging eight counts, Plaintiff now only alleges a federal and state takings claim, a due-process violation, and common-law trespass against Defendants Ogemaw and its purported managing director, Patrick Reinke. Defendants have filed a motion to dismiss. As explained below, Plaintiff's remaining claims are viable, so Defendants' Motion to Dismiss will be denied.

**I.**

In 2017, Plaintiff Larry Wade Miner purchased Lots 2 and 3 in the East Twin Subdivision.[1]

ECF Nos. 3 at PageID.58; 30 at PageID.311. He purchased adjacent Lot 4 on June 8, 2020. ECF

No. 30-2 at PageID.338. The following survey shows his property in relation to Sage Lake Road:



ECF No. 25-1 at PageID.282.

---

[1] Notably, the property is listed in both Larry's name and his wife's name, Linda L. Miner. *See* ECF No. 30-2 at PageID.339. Linda Miner is not a party to this action.

As reflected in the survey, the Northern boundary of Plaintiff's property abuts the Southside of Sage Lake Road, an Ogemaw County highway. ECF No. 3 at PageID.58. Robert Reid[2] owns the real property on the Northside of Sage Lake Road and, according to Plaintiff, is the beneficiary of the culvert. *Id.*

Plaintiff claims that Defendant Ogemaw installed the metal culvert under Sage Lake Road within the last ten years. *Id.* Defendant Ogemaw contends that it installed the culvert in or before 1961. ECF No. 30 at PageID.317.

Plaintiff alleges that he contacted Defendant Ogemaw on "dozens of occasions during 2017–2019." ECF No. 3 at PageID.59. On October 24, 2017, Plaintiff notified Defendant Ogemaw the first of "many of times regarding water flooding his crawl space." ECF No. 30-2 at PageID.342. Three days later, Defendant Ogemaw "determined" that "the ditch in front of [Plaintiff's] house" is "off [Defendant Ogemaw's] right of way and on [Plaintiff's] private property[,] which will need to be taken care of by Plaintiff." *Id.* at PageID.343.

In July 2019, Plaintiff contacted Defendant Ogemaw, again, demanding "just compensation" for taking his property by flooding it. ECF Nos. 3 at PageID.59; 30 at PageID.311–12. In August 2019, Defendant Patrick Reinke told Plaintiff that Ogemaw County would not pay for the damage to his property. *See* ECF Nos. 3 at PageID.59; 30-2 at PageID.348 ("As a general rule a parcel of land downstream, or [of lower] elevation is subservient to the parcel of land that is of higher elevation and drains to the parcel of land that is lower elevation."). Plaintiff contacted Ogemaw County Drain Commissioner Mike DeMatio, who "confirmed that Defendant [Ogemaw] did not have any drainage easement" for the culvert. ECF No. 3 at PageID.59. Plaintiff secured a

---

[2] Robert Reid was a defendant in the original complaint but has since been dismissed per the parties' stipulation. ECF No. 18.

survey, which demonstrates that Defendant Ogemaw installed the culvert outside the Sage Lake Road right-of-way, thus, encumbering Lot 4. *Id.*

On January 2, 2020, Plaintiff blocked the culvert to prevent flooding on his property. *Id.* at PageID.60; ECF No. 30-2 at PageID.343. The next day, employees from Defendant Ogemaw went onto Plaintiff's property, apparently without permission, to unblock and cut the culvert so that it no longer physically intruded onto Plaintiff's property. ECF No. 3 at PageID.60. The project cost approximately $296.95 in labor and parts. ECF No. 30-2 at PageID.343.

Defendant Patrick Reinke contacted Ogemaw County Sherriff's Deputy Justin Noffsinger and Ogemaw County Prosecutor Ladonna Schultz to secure criminal charges against Plaintiff for blocking the culvert. *See* ECF No. 3 at PageID.60. Deputy Justin Noffsinger filed a police report, *id.* (citing Ex. B), and then informed Plaintiff that he faced criminal charges if he blocked the culvert. *Id.* at PageID.61.

The 12 inches of culvert that Defendants removed did not stop Plaintiff's problems. The culvert, he alleges, not only was still physically located on his property but also was still draining water onto his property. *Id.*

In April 2020, the culvert flooded Plaintiff's land again, extensively damaging his property. ECF No. 3 at PageID.61. Then the culvert was blocked again. *Id.* Deputy Justin Noffsinger interrogated Plaintiff about the blocking, but Plaintiff denied any involvement. *See id.* at PageID.62. On April 30, 2020, Prosecutor Ladonna Schultz charged Plaintiff with willful and malicious destruction of "the personal property of Ogemaw County Road Commission," MICH. COMP. LAWS § 750.377a(1)(d).[3] ECF No. 3 at PageID.62 (citing Ex. C). Plaintiff contends that the charges were initiated in retaliation for Plaintiff's exercise of his property rights. *Id.*

---

[3] Section 750.377a(1)(d) reads in full:

Defendants continued to monitor the culvert on Plaintiff's property, and Plaintiff alleges that they again entered his property without permission to unblock the culvert on July 1 and July 13, 2020. ECF No. 30-2 at PageID.344.

After Plaintiff filed this suit, Prosecutor Ladonna Schultz pursued the criminal charges against Plaintiff. *See* ECF No. 3 at PageID.63. In January 2021, Plaintiff retained Kuhn Rogers to pursue the immediate case on his behalf. *Id.* In February 2021, Plaintiff's counsel made a FOIA request to Hill Township and Defendant Ogemaw, to which Defendant Ogemaw responded on March 3, 2021. *Id.* The next day, Prosecutor Ladonna Schultz obtained a warrant for Plaintiff's arrest based on the May 5, 2020 complaint and warrant. *Id.* According to Plaintiff, the FOIA request revealed that Defendants Ogemaw, Schultz, Nossinger, and Reid worked together to deprive Plaintiff of his property rights. *Id.*; *see also* ECF No. 30-2 at PageID.385. Among the records is a screenshot of texts between Defendants Reid and Reinke. ECF No. 3 at PageID.63.

On April 15, 2021, Plaintiff brought the instant eight-count complaint in the Ogemaw County Circuit Court, alleging: (Count I) violation of the federal Takings Clause under 42 U.S.C. § 1983; (Count II) violation of the Michigan takings clause, MICH. CONST. of 1963, art. X, § 2 (2006); (Count III) violation of due process under 42 U.S.C. § 1983; (Count IV) conspiracy to interfere with civil rights under 42 U.S.C. § 1983; (Count V) trespass, MICH. COMP. LAWS § 750.552; (Count VI) malicious prosecution, MICH. COMP. LAWS § 600.2907; (Count VII) abuse of

---

A person who willfully and maliciously destroys or injures the personal property of another person is guilty of a crime as follows: If the amount of the destruction or injury is less than $200.00, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00 or 3 times the amount of the destruction or injury, whichever is greater, or both imprisonment and a fine.

MICH. COMP. LAWS § 750.377a(1)(d).

process, MICH. COMP. LAWS § 750.369; and (Count VIII) unlawful arrest. ECF No. 1-1 at PageID.5–19; *see also Miner v. Schultz*, No. 21-651788-CZ (Mich. 34th Cir. Ct. 2021).

After a series of stipulations and dismissals, only Counts I, II, III, and V remain against Defendants Ogemaw and Reinke. ECF No. 36; *see* ECF Nos. 18; 28. Defendants Ogemaw and Reinke filed a motion to dismiss those four counts, ECF No. 30, and Plaintiff responded, ECF No. 32. Defendants also filed a motion to bar four of Plaintiff's witnesses from testifying, ECF No. 39, to which Plaintiff has responded, ECF No. 40. Defendants have not replied to either response. As explained below, both Motions will be denied.

## II.

Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 30. Specifically, Defendants make five arguments for dismissal: (1) Plaintiff's federal and state takings claims are time-barred; (2) Plaintiff has failed to state a claim under 42 U.S.C. § 1983; (3) Plaintiff has failed to state a claim for conspiracy;[4] (4) Plaintiff's state-law tort claims against Defendant Ogemaw are barred by governmental immunity; and (5) Plaintiff's state-law tort claims against Defendant Reinke are barred by governmental immunity. *Id.* Plaintiff responds that (1) Plaintiff's federal and state takings claims (Counts I and II) are not time-barred; (2) Plaintiff has stated a claim for violation of due process (Count III); and (3) Plaintiff's trespass claim (Count V) is not barred by governmental immunity. ECF No. 32.

## A.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the nonmovant's favor and

---

[4] This argument will not be considered because Plaintiff withdrew Count IV. *See* ECF No. 36.

accepts its factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The nonmovant need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

In addition to these general principles, the Sixth Circuit has emphasized that, because the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Yet there are exceptions to this general rule, including "[i]f the allegations, for example, show that relief is barred by the applicable statute of limitations." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (citing FED. R. CIV. P. 8(c)).

**B.**

Defendants allege that Plaintiff's Fifth Amendment[5] and Michigan[6] takings claims are time-barred. *See* ECF No. 30 at PageID.317–19. Specifically, Defendants argue that Plaintiff's takings claims are time-barred by the applicable 15-year statute of limitations because the culvert was installed in 1961, contrary to Plaintiff's assertion in the Complaint that Ogemaw County installed it within the last ten years. *See id.* (citing MICH. COMP. LAWS § 600.5801(4)). Defendants conclude that Plaintiff's takings claim accrued 61 years ago, in 1961, and that Plaintiff's Complaint is untimely. *See id.* at PageID.318–19.

Plaintiff responds that the documents Defendants rely on do not demonstrate that the culvert was, in fact, installed in 1961. ECF No. 32 at PagID.410. For that reason, Plaintiff adds, this Court should accept the Complaint's well-pleaded facts as true and deny the Motion to Dismiss as to Counts I and II. *Id.* at PageID.411.

**i.**

Notably, "[w]hen ruling on a motion to dismiss, a court may not consider matters outside the pleadings." *Chamberlain v. Reddy Ice Holdings, Inc.*, No. CIVA 2:08-13451, 2010 WL 1711760, at *3 (E.D. Mich. Apr. 28, 2010) (citations omitted). But "[c]ourts may . . . consider public records and filings with government agencies without converting a motion to dismiss under

---

[5] "The Due Process Clause of the Fifth Amendment to the United States Constitution bars the federal government from depriving a person of 'life, liberty, or property' without 'due process of law.' The same due process principles apply to state governments under the Fourteenth Amendment to the United States Constitution." Bradford C. Mank, *Can Judges Use Due Process Concepts in* Obergefell *to Impose Judicial Regulation of Greenhouse Gases and Climate Change?: The Crucial Case of* Juliana v. United States, 7 BELMONT L. REV. 277, 279 n.8 (2020) (first citing U.S. CONST. amend. V; and then citing U.S. CONST. amend. XIV) (other citations omitted).

[6] "The 2006 amendment to the Michigan constitution restricted the state's taking power. Thus, under limited circumstances, local governments in Michigan are permitted to take private property for economic revitalization and community enhancement." James A. Martone, Note, *Rethinking Eminent Domain in Michigan*, 58 WAYNE L. REV. 537, 539 (2012).

Rule 12(b)(6) to a summary judgment motion." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992 (2002). Nevertheless, when documents attached to a motion to dismiss are not incorporated by reference in the plaintiff's complaint, the court may not consider them unless they (1) are readily verifiable and integral to the parties' dispute and (2) do not ask the court to adopt disputed facts as true. *Chamberlain*, 2010 WL 1711760, at *3 (quoting *In re Cardinal Health Inc. Sec. Litigs.*, 426 F. Supp. 2d 688, 713 (S.D. Ohio 2006)).

The exhibits do not support Defendants' version of the facts. Although exhibit 6 and 7 might indicate that *some* culvert was installed in 1961, they do not clearly substantiate that proposition. Indeed, Defendants do not even attempt to explain how those exhibits demonstrate the culvert's purported 1961 installation date. *See* ECF No. 30-2 at PageID.359. Likewise, those exhibits do not indicate that Defendants have not performed any work on the culvert since 2005. On the contrary, the parties agree that Defendant Ogemaw altered the culvert on January 3, 2020, and unblocked the culvert on July 2 and July 13, 2020. ECF Nos. 3 at PageID.60; 30-2 at PageID.343–44. Moreover, as Plaintiff notes, "documents included in those exhibits are of unknown origin and are not even accompanied by an affidavit or sworn statement of a custodian or other witness to lay a proper foundation for the documents." ECF No. 32 at PageID.410.

Defendants' exhibits at best demonstrate a genuine issue of material fact about the culvert's installation date. Therefore, those exhibits should not be considered at this stage in the litigation. *Id.* Even so, both parties apply the wrong law.

**ii.**

Under Michigan's "continuous wrong" doctrine,[7] Plaintiff's takings claims survive Defendants' challenge. Defendants correctly explain that if the culvert was installed in 1961 without any later change, Plaintiff's claim would have accrued in 1961 and would, therefore, be time-barred. *See Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (dismissing flood-based takings claims because "the water level of their wells does not depend on any continual intervention by the state"). Unlike the defendants in *Hensley*, however, Defendants concede that they altered the culvert after 1961.

"In an inverse condemnation action [alleging] a continuous wrong by the condemnor, it is well settled that the statute of limitations does not begin to run until the consequences of the condemnor's actions have stabilized." *Hart v. City of Detroit*, 331 N.W.2d 438, 445 (Mich. 1982) (first citing *United States v. Dickinson*, 331 U.S. 745 (1947); and then citing *Silverstein v. City of Detroit*, 335 F. Supp. 1306 (E.D. Mich. 1971)). The precise time when the limitations period begins is based on the facts and circumstances of each case. *Id.*

In the Sixth Circuit, a "continuous wrong" exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided. *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 521 (6th Cir. 1997) (citations omitted). But plaintiffs cannot claim a "continuous wrong" based on water flooding onto their land. M. Bryan Schneider & Jody L. Sturtz, *Civil Procedure*, 43 Wayne L. Rev. 439, 583–85 (1997) (citing *Horvath v. Delida*, 540 N.W.2d 760 (Mich. Ct. App. 1995)). Michigan courts have limited the doctrine to "trespass and

---

[7] Ample precedent supporting the continuing-wrong doctrine exists in Michigan. Peggy L. Miller, *Repeated Wrongs Do Not Make A Right: Continuing-Wrong Doctrine & Personal Injury Claims*, 9 T.M. Cooley L. Rev. 369, 373 (1992) (collecting cases).

nuisance claims." *Id.* at 583–84 (first citing *Defnet v. City of Detroit*, 41 N.W.2d 539, 541 (Mich. 1950) (en banc) (applying doctrine to trespass claim)); and then citing *Moore v. City of Pontiac*, 372 N.W.2d 627, 629 (Mich. Ct. App. 1985) (applying doctrine to nuisance claim)).

Assuming the facts as true, at this Court must at the motion-to-dismiss stage, Plaintiff's takings claims are not time-barred. On January 3, 2020, Defendants entered Plaintiff's land and trimmed the length of the culvert. ECF Nos. 3 at PageID.60; 30-2 at PageID.343. Defendants again unblocked the culvert on July 1 and July 13, 2020. ECF No. 30-2 at PageID.344. Had these events not occurred, Plaintiff's claims would be time-barred because the flooding itself does not affect the statute of limitations for Plaintiff's takings claims. *See Hensley*, 557 F.3d at 697. But because Defendants altered and unblocked the culvert in January and July 2020, which flooded Plaintiff's land at least once afterward in April 2020, *see* ECF No. 3 at PageID.61, Plaintiff's claims survive under the "continuous wrong" doctrine. In this way, the 15-year statute of limitations began to run on July 13, 2020, and Plaintiff could therefore bring his takings claims until July 13, 2035.

Notably, despite innumerable available theories,[8] Defendants have not offered any public-use rationale or state interest for the alleged taking. *See* Matthew D. Zinn, Note, *Ultra Vires Takings*, 97 MICH. L. REV. 245, 276 (1998) (noting that "actions that amount to physical invasions of property" are "takings per se" (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992))).

Taking the allegations in Plaintiff's Complaint as true, as this Court must, Plaintiff has properly pled that Defendants have unconstitutionally taken his property through actions that

---

[8] *E.g.*, Mason E. Heidt & Joshua Wysor, *Don't Condemn My Creek: Using Eminent Domain to Satisfy Environmental Obligations*, 7 BELMONT L. REV. 370, 377 (2020) (discussing "environmental protection" as a possible public use); *see also* Michael B. Kent, Jr., *Public Pension Reform and the Takings Clause*, 4 BELMONT L. REV. 1, 25 (2017) ("[I]n the context of regulatory takings, there is a general presumption that the government's action is supported by a public purpose.").

occurred within the applicable 15-year limitation period. Defendants' Motion to Dismiss must therefore be denied as to Counts I and II.

**C.**

Defendant's second argument is that Plaintiff has not properly pled a due-process claim under § 1983, and that even if he has, it is barred because it is subsumed by the rights that he has invoked in his takings claims. *See* ECF No. 30 at PageID.319–24.

Plaintiff has not sufficiently pled his due-process claim. Plaintiff's Complaint does not identify the life, liberty, or property interest at stake. Rather, Plaintiff's due-process claim merely quotes the Due Process Clause, asserts that Defendants violated it, alleges that Defendants' violations harmed him, and then "incorporates the preceding paragraphs as if stated fully herein." *See* ECF No. 3 at PageID.67. There is not even a hint of how those assertions interface with Plaintiff's puzzling due-process claim. For that reason, Defendant's Motion to Dismiss should be granted as to Count III. FED. R. CIV. P. 12(b)(6); *Jirjis v. Wachovia*, No. 10-11728, 2011 WL 87247, at *5 (E.D. Mich. Jan. 11, 2011) ("[B]are-bones allegations are plainly insufficient to survive a 12(b)(6) motion to dismiss.").

But Plaintiff's response puts more meat on the bones: "Plaintiff's complaint alleges that Defendants did not effect a taking of his land for a *public* purpose, but rather for the *private* benefit of the Hill Township Supervisor, Robert Reid." ECF No. 32 at PageID.412 (citing ECF No. 3 at PageID.58–60). "The Fifth Amendment . . . implies that the power of eminent domain does not permit takings of private property for strictly private uses, regardless of whether just compensation is paid." *Montgomery v. Carter Cnty.*, 226 F.3d 758, 765 (6th Cir. 2000) (internal citation omitted) (citing *Coniston Corp. v. Vill. of Hoffman Ests.*, 844 F.2d 461, 464 (7th Cir. 1988)).

- 12 -

Defendants are correct that "substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by a plaintiff." ECF No. 30 at PageID.320 (first citing *Choate's Air Conditioning & Heating Inc., v. Light, Gas, Water Div. of Memphis*, 16 F. App'x 323, 330–331 (6th Cir. 2001) (unpublished); and then citing *Montgomery v. Carter Cnty.*, 226 F.3d 758, 769 (6th Cir. 2000)).

But in the takings cases that Defendants cite for that proposition, the plaintiffs attempted to establish standing to challenge private-use takings in federal court without exhausting state procedures as required. Accordingly, the courts were addressing an "end run" around the ripeness doctrine. *See Choate's*, 16 F. App'x at 331; *Montgomery*, 226 F.3d at 769–71. Ripeness is not at issue in this case, because Plaintiff properly pleaded his takings claims under the "continuous wrong" doctrine. Moreover, the due-process analyses in those cases are at most dicta. *See Choate's*, 16 F. App'x at 332; *Montgomery*, 226 F.3d at 770. And Defendant has not cited any controlling precedent requiring dismissal of a due-process claim for a taking when the plaintiff has also pled a Fifth Amendment or state-law taking.

Further, Plaintiff's claim that Defendants took his property for a private use invokes a separate property interest than his claim that Defendants took his property for a public use.

For these reasons, Defendant's Motion to Dismiss will be denied as to Count III.

### D.

Defendants next argue that governmental immunity bars Plaintiff's Michigan trespass claim against Defendants Ogemaw and Reinke. *See* ECF No. 30 at PageID.326–31. Specifically,

- 13 -

Defendants claim that Michigan Compiled Laws § 691.1401 *et seq.*[9] immunizes Defendant Ogemaw, and that Michigan Compiled Laws § 691.1407(5)[10] immunizes Defendant Reinke. *Id.*

Political subdivisions of the State of Michigan, like Defendant Ogemaw, enjoy immunity from tort liability under the Governmental Tort Liability Act (GTLA), MICH. COMP. LAWS § 691.1401 *et seq. See* MICH. COMP. LAWS § 691.1401(d) (defining "governmental agency" as "the state or a political subdivision"). Under the GTLA, Defendant Ogemaw is immune from tort liability "unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Mack v. City of Detroit*, 649 N.W.2d 47, 52 (Mich. 2002).

The GTLA permits a cause of action to be brought against a governmental agency in only six discrete areas, none of which apply here. *See Lash v. City of Traverse City*, 735 N.W.2d 628, 637 n.33 (Mich. 2007) (listing the other five exceptions).

Yet "Plaintiff could enforce the statute by seeking injunctive relief pursuant to [Michigan Compiled Laws § 3.310]," or declaratory relief pursuant to [Michigan Compiled Laws § 2.605(A)(1)]." *Lash v. Traverse City*, 735 N.W.2d 628, 638 (Mich. 2007); *see also Morley v. Twp. of Bangor*, No. 340636, 2019 WL 1867640, at *7 (Mich. Ct. App. Apr. 25, 2019) (unpublished) (per curiam) ("An action to abate a nuisance is 'equitable in nature.'" (quoting *Ypsilanti Charter*

---

[9] The Governmental Tort Liability Act states, "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MICH. COMP. LAWS § 691.1401 *et seq.*
[10] Under Michigan Compiled Laws § 691.1407(5):

> To qualify for absolute immunity from tort liability an individual governmental employee must prove his or her entitlement to immunity by establishing, consistently with the statute's plain language, (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority.

*Petipren v. Jaskowski*, 833 N.W.2d 247 (Mich. 2013).

*Twp. v. Kircher*, 761 N.W.2d 761 (Mich. Ct. App. 2008))). In this way, Defendant Ogemaw is not immune from Plaintiff's trespass claim if he seeks declaratory or injunctive relief.

The same analysis applies to Defendant Reinke's claim for absolute immunity under Michigan Compiled Laws § 691.1407(5). Even so, Defendant Reinke has not submitted any evidence to establish "whether [his] executive authority actually included the ability to [take the actions he took]." *Petipren v. Jaskowski*, 494 Mich. 190, 212; 833 N.W.2d 247 (2013). Indeed, Defendant Reinke has not submitted an affidavit or other documentary evidence describing his responsibilities as managing director or the official job description for his position. Without such evidence, it is not possible to evaluate Defendant Reinke's entitlement to absolute immunity under Michigan Compiled Laws § 691.1407(5).

Moreover, Defendant Reinke is subject to money damages for trespass. Although municipalities are immune from money damages for intentional torts. *Pohutski v. City of Allen Park*, 641 N.W.2d 219, 229 (Mich. 2002) ("[T]he plain language of the governmental tort liability act does not contain a trespass-nuisance exception to governmental immunity [for municipal corporations]." (citing MICH. COMP. LAWS § 691.1507(1))). But the express language of § 691.1407(3) removes intentional torts like trespass from the scope of the qualified immunity afforded to officers and employees of governmental agencies under § 691.1407(2). *See* MICH. COMP. LAWS § 691.1407(2), (3). Assuming Plaintiff's alleged facts as true, as this Court must at this stage, Plaintiff has pled a viable trespass claim for money damages against Defendant Reinke.

Under any measure, then, Defendant Reinke is not immune from Plaintiff's trespass claim.

Plaintiff seeks declaratory and injunctive relief for Defendants' trespass on his property. *See* ECF No. 3 at PageID.72. Because governmental immunity only bars Plaintiff from recovering *monetary damages* for state common-law tort claims from Ogemaw, and Plaintiff seeks injunctive

- 15 -

relief from Ogemaw and injunctive and monetary relief from Defendant Reinke, Defendants'

Motion to Dismiss will be denied.

## E.

Defendants also allege that they are "are entitled to reimbursement of their costs, attorney's

fees, and expert fees pursuant to 42 U.S.C. § 1988." ECF No. 30 at PageID.331–33. Specifically,

Defendants conclude that "justice demands that Plaintiff be ordered to reimburse Defendants

Reinke and Ogemaw for the costs incurred in defending against Plaintiff's groundless claims,

including their attorneys' fees and expert fees." *Id.* at PageID.333.

Plaintiff responds that "even if the Court does grant Defendants' motion to dismiss as to

one or more of the claims asserted in Plaintiff's complaint, Defendants' request for reimbursement

should nevertheless be denied because Plaintiff's action is not 'frivolous, unreasonable, or without

foundation.'" ECF No. 32 at PageID.416 (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980))

Defendants are not entitled to costs or fees. Defendants' request is conditioned on this

Court dismissing Plaintiff's claims. As explained earlier, none of Plaintiff's outstanding claims

will be dismissed. *See* discussion *supra* Part II. Consequently, Defendants' request for costs and

fees will be denied.

## III.

Defendants also filed a motion to "strik[e] Plaintiff's expert witness, professional surveyor,

and any expert testimony from Plaintiff's treating physicians." ECF No. 39 at PageID.433 (first

citing FED. R. CIV. P. 26(a)(2)(B); and then citing FED. R. CIV. P. 37(c)(1)). Defendants add that

"Plaintiff has not filed any accompanying reports as are required for his filings to be compliant

with the federal rules." ECF No. 39 at PageID.436. Defendants elaborate that "[b]ecause the end

of discovery is fast approaching, [they] will be prejudiced by any of Plaintiff's experts testifying." ECF No. 39 at PageID.437.

Plaintiff responds that his only expert witness "was Andrew S[m]its," an environmental and geological engineer who is the elected drain commissioner of Grand Traverse County. *See* ECF No. 40 at PageID.450. Plaintiff explains that "Mr. S[m]its is therefore the only expert for which Plaintiff was required to include a written report under Fed. R. Civ. P. 26(a)(2)(B)." *Id.* Plaintiff therefore concludes, "As it pertains to all other witnesses who may provide expert testimony but do not fall within the purview of Rule 26(a)(2)(B), Plaintiff has made proper disclosure." *Id.*

Defendants' Motion to Strike is confusing. Their Motion seemingly requests that this Court strike Plaintiff's one expert witness and all his lay witnesses because he did not disclose any expert reports under Rule 26(a)(2)(B).

## A.

Plaintiff concedes that he did not file an expert report for Andrew Smits because it was not required. ECF No. 40 at PageID.448 ("Plaintiff does not intend to call Mr. Smits as an expert witness unless his testimony is needed to rebut expert testimony elicited from one or more of Defendants' retained experts in this case.").

Rule 26 requires disclosures of rebuttal expert testimony within 30 days of the expert disclosure triggering the rebuttal. *See* FED. R. CIV. P. 26(a)(2)(D)(ii); *see also Miller v. Gentry*, No. 1:16-CV-707, 2018 WL 11243682, at *1 (W.D. Mich. Apr. 25, 2018) ("Unless the witness is intended solely to rebut an opposing party's expert witness on the same subject matter, the expert witness must be disclosed at least 90 days before trial." (citing FED. R. CIV. P. 26(a)(2)(D)(i) and (ii)). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e),

the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Plaintiff did not disclose Andrew Smits as required, but that failure was substantially justified and harmless. Plaintiff timely disclosed Andrew Smits as an expert witness. *See* ECF Nos. 17 at PageID.199; 39-2 at PageID.442. Thus, Defendants knew of Andrew Smits's intended testimony since September 30, 2021. *See* ECF No. 39-2 at PageID.442. Plaintiff had the opportunity to disclose Andrew Smits's expert report within 30 days of Defendants' disclosure of the expert testimony that Andrew Smits will rebut. Yet Plaintiff still has not made the disclosure. But as Plaintiff notes, this Court issued an order refusing to extend the disclosure deadline for Andrew Smits's written report even though he could not complete it before the disclosure deadline. *See* ECF No. 40 at PageID.448. So Plaintiff chose to call Andrew Smits as a rebuttal expert instead. Defendants had the opportunity to depose Andrew Smits as a rebuttal expert after Plaintiff disclosed him, yet Defendants cancelled their scheduled deposition. *See* ECF No. 40 at PageID.448. As indicated, Plaintiff's failure to disclose Andrew Smits's expert report was substantially justified and harmless. *See Lewis v. Allstate Ins.*, No. CV H-18-3931, 2021 WL 415439, at *5 (S.D. Tex. Feb. 5, 2021) (finding a failure to disclose expert testimony justified and harmless when because "their views and opinions [were] likely known to the plaintiffs").

In applying the Federal Rule of Civil Procedure, district courts retain "broad discretion to supervise discovery." *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (applying Rule 26(e)(1)) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)); *see also Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS-CHL, 2017 WL 4799815, at *3 (W.D. Ky. Oct. 24, 2017) ("It is axiomatic that the Court has broad discretion in

- 18 -

determining the proper scope of discovery." (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981))). Given that six months have passed since Plaintiff's first attempt to submit Andrew Smits's report, the report is likely complete, and Plaintiff could likely remedy his shortcoming with ease. For this reason, "the proper course is for [Plaintiff] to supplement or correct [his] disclosure to bring [Andrew Smits's] report in compliance with Rule 26." *Davis v. Rockwall Cnty.*, No. 3:08-CV-01773-F, 2010 WL 11561780, at *2 (N.D. Tex. Nov. 22, 2010).

Plaintiff will be directed to supplement his disclosure of Andrew Smits's expert report. Although a scheduling order currently governs discovery in this case, it is silent on supplemental expert reports. *See* ECF No. 17 at PageID.199. Yet Rule 26(e) plainly requires supplementation of an expert report in response to a court order. *In re Flint Water Cases*, No. 17-10164, 2021 WL 5124253, at *2 (E.D. Mich. Nov. 4, 2021) (citing FED. R. CIV. P. 26(e)(1)(B)); *see also Wright v. Best Recovery Servs. LLC*, No. 14-CV-12476, 2015 WL 1849405, at *3 (E.D. Mich. Apr. 22, 2015) ("The Court may also order the disclosure of undisclosed information."). Sixth Circuit policy "values the disposition of cases on their merits." *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006). This Court will not prejudice Plaintiff for failing to follow a provision that does not exist in the scheduling order. For these reasons, Plaintiff will be directed to submit the expert report of Andrew Smits within 30 days of this Order. Defendant will have until June 1, 2022 to depose Andrew Smits.

### B.

Defendants' Motion is inapposite to the extent that it seeks to exclude Plaintiff's lay witnesses, because Plaintiff disclosed them as required under Federal Rule of Civil Procedure 26, and lay witnesses do not need to disclose expert reports.

Defendants' Motion also seeks to exclude Plaintiff's treating physicians, Drs. Asma Saboor and Scott Huffaker, and Plaintiff's land surveyor, Mark Jakubik. *See* ECF Nos. 39 at PageID.437; 39-2 at PageID.445. Defendants argue that those three witnesses should be excluded because they will give expert testimony but did not provide expert reports.

But Plaintiff did not retain those three witnesses in anticipation of litigation and, therefore, he did not need to disclose written reports for them. *See* FED. R. CIV. P. (a)(2)(B); *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 452 (E.D. Mich. 2017) (noting that "experts who are not retained or specially employed to provide expert testimony" must comply with Rule 26(a)(2)(C)). The doctors are Plaintiff's treating physicians. And the land surveyor conducted the pre-litigation land survey that this Court invited Plaintiff to disclose. *See* ECF Nos. 22 at PageID.254; 25-1 at PageID.282. Plaintiff did not retain those three experts to offer expert testimony in this litigation. Thus, Plaintiff instead had to follow Rule 26(a)(2)(C), which he did. *See* ECF No. 39-2 at PageID.445 (describing the subject matter of the evidence the three witnesses will present and a summary of the facts and opinions to which the witnesses will testify). Because Plaintiff properly disclosed Asma Saboor, Scott Huffaker, and Mark Jakubik, they may testify.

For these reasons, Defendants' Motion to Strike will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 30, is **DENIED**.

Further, it is **ORDERED** that Defendants' Motion to Strike, ECF No. 39, is **DENIED WITHOUT PREJUDICE**.

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to supplement or correct his disclosure of Andrew Smits's expert report **on or before 30 days of this Order**.

Further, it is **ORDERED** that Defendant is **DIRECTED** to depose Andrew Smits **on or before June 1, 2022**.

Further, the in-person settlement conference remains scheduled for **April 13, 2022 at 4:00 PM.**

Dated: March 29, 2022                                     s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judge