UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARRY W. MINER,

                Plaintiff,                        Case No. 1:21-cv-11192

v.                                         Honorable Thomas L. Ludington
                                             United States District Judge

OGEMAW COUNTY ROAD COMMISSION
and PATRICK J. REINKE,

                Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

At some unidentified time, Defendant Ogemaw County Road Commission ("Ogemaw") installed a drain culvert under Sage Lake Road. The culvert diverts water from Robert Reid's land to Plaintiff's land, which Defendants argue is the water's natural course but for the construction of Sage Lake Road. Nothing in the evidentiary record clearly reflects the culvert's purpose: where Ogemaw intended the water to go after reaching Plaintiff's land.

Plaintiff repeatedly blocked the culvert to prevent it from flooding his house and land. Each time, Ogemaw unblocked and trimmed it. The culvert still floods and physically occupies Plaintiff's land by approximately 0.33 feet, which he contends are takings. Ogemaw, by contrast, asserts an easement for the culvert and that the flooding is not a taking. Plaintiff pursues a federal and state takings claim, a due-process claim, and a claim for common-law trespass.

Among others, the questions before this Court are whether the physical occupation of a drain culvert on private property is a taking, whether Ogemaw is immune from injunctive relief, whether road-commission employees are immune from trespass claims, and whether the culvert's current purpose is public or private.

**I.**

In 2017, Plaintiff Larry Wade Miner purchased Lots 2 and 3 in the East Twin Subdivision.[1]

ECF Nos. 3 at PageID.58; 30 at PageID.311. He purchased adjacent Lot 4 on June 8, 2020. ECF

No. 30-2 at PageID.338. The following survey shows his property in relation to Sage Lake Road:



ECF No. 25-1 at PageID.282.

---

[1] Notably, the property is listed in both Larry's name and his wife's name, Linda L. Miner. *See* ECF No. 30-2 at PageID.339. Linda Miner is not a party to this action.

As reflected in the survey, the northern boundary of Plaintiff's property abuts the south side of Sage Lake Road, an Ogemaw County highway. ECF No. 3 at PageID.58. Local Township Supervisor Robert Reid[2] owns the real property on the north side of Sage Lake Road and, according to Plaintiff, is the beneficiary of the culvert. *Id.*; ECF No. 47 at PageID.509.

Plaintiff claims Ogemaw installed the metal culvert under Sage Lake Road within the last ten years. ECF No. 3 at PageID.58. Ogemaw believe the culvert was installed in 1961 "as part of the federal aid project to improve the Sage Lake Road public right-of-way." ECF No. 48 at PageID.645 (citing ECF No. 48-2 at PageID.733); *see also* ECF No. 30 at PageID.317.

Plaintiff contacted Ogemaw on "dozens of occasions during 2017–2019." ECF No. 3 at PageID.59. On October 24, 2017, he notified Ogemaw for the first of "many of times regarding water flooding his crawl space." ECF No. 30-2 at PageID.342. Three days later, Ogemaw "determined" that "the ditch in front of [Plaintiff's] house" is "off [Ogemaw's] right of way and on [Plaintiff's] private property[,] which will need to be taken care of by Plaintiff." *Id.* at PageID.343.

In July 2019, Plaintiff contacted Ogemaw, again, demanding "just compensation" for taking his property by flooding it. ECF Nos. 3 at PageID.59; 30 at PageID.311–12. In August 2019, Ogemaw County Road Commission Managing Director Patrick Reinke told Plaintiff that Ogemaw County would not pay for his property damage due to a drainage easement. *See* ECF Nos. 3 at PageID.59; 30-2 at PageID.348. Plaintiff contacted Ogemaw County Drain Commissioner Mike DeMatio, who allegedly "confirmed that Defendant [Ogemaw] did not have any drainage easement" for the culvert. ECF No. 3 at PageID.59. Both parties' surveys

---

[2] Although Robert Reid was a defendant in the original complaint, the parties stipulated to dismiss him. ECF No. 18.

demonstrate that Ogemaw installed the culvert outside the Sage Lake Road right-of-way, thus, encumbering Lot 4. *Id.*; ECF No. 48-2 at PageID.763.

On January 2, 2020, Plaintiff blocked the culvert to prevent flooding on his property. ECF No. 30-2 at PageID.343. The next day, Ogemaw County employees admittedly entered Plaintiff's land without permission to unblock and to cut the culvert so that it no longer physically trespassed onto Plaintiff's land. *See* ECF No. 30 at PageID.313 ("Defendants Noffsinger and Schultz 'agreed to have the Road Commission cut the culvert back off [Plaintiff's] property.'" (quoting ECF No. 3 at PageID.78)). The project cost approximately $296.95 in labor and associated expenses. ECF No. 30-2 at PageID.343.

Reinke contacted Ogemaw County Sheriff's Deputy Justin Noffsinger and Ogemaw County Prosecutor Ladonna Schultz, seeking criminal charges against Plaintiff for blocking the culvert. *See* ECF No. 3 at PageID.60. Noffsinger filed a police report, *id.* (citing ECF No. 3 at PageID.77–79), and then informed Plaintiff that he faced criminal charges if he blocked the culvert again. *Id.* at PageID.61.

The 12 inches of culvert that Defendants removed did not stop Plaintiff's problems. In April 2020, the culvert flooded Plaintiff's land again, extensively damaging his property. *Id.* Then the culvert was blocked again. *Id.* Noffsinger interrogated Plaintiff about the blocking, which he denied. *See id.* at PageID.62. On April 30, 2020, Schultz charged Plaintiff with willful and malicious destruction of "the personal property of Ogemaw County Road Commission,"[3] which

---

[3] Section 750.377a(1)(d) reads in full:
> A person who willfully and maliciously destroys or injures the personal property of another person is guilty of a crime as follows: If the amount of the destruction or injury is less than $200.00, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00 or 3 times the amount of the destruction or injury, whichever is greater, or both imprisonment and a fine.

he believes was initiated in retaliation for exercising his property rights. *Id.* (citing ECF No. 3 at PageID.81–83).

Defendants continued to monitor the culvert on Plaintiff's property, and they again entered his land without permission to unblock the culvert on July 1, July 6, and July 13, 2020. ECF No. 30-2 at PageID.344.

After Plaintiff filed this suit, Schultz pursued the criminal charges against Plaintiff. *See* ECF No. 3 at PageID.63. In January 2021, he retained Kuhn Rogers to pursue the immediate case on his behalf. *Id.* In February 2021, Kuhn Rogers made a FOIA request to Hill Township and Ogemaw County, to which Ogemaw responded on March 3, 2021. *Id.* The next day, Schultz obtained a warrant for Plaintiff's arrest based on the May 5, 2020 complaint and warrant. *Id.* According to Plaintiff, the FOIA request revealed that Defendants Ogemaw, Schultz, Nossinger, and Reid worked together to deprive him of his property rights. *Id.* Among the records is a screenshot of texts between Reid and Reinke, both government employees. ECF Nos. 3 at PageID.63; 30-2 at PageID.385; 48-2 at PageID.789.

On April 15, 2021, Plaintiff brought the instant eight-count complaint in the Ogemaw County Circuit Court, alleging: (Count I) violation of the federal Takings Clause under 42 U.S.C. § 1983; (Count II) violation of the Michigan takings clause, MICH. CONST. of 1963, art. X, § 2 (2006); (Count III) violation of due process under 42 U.S.C. § 1983; (Count IV) conspiracy to interfere with civil rights under 42 U.S.C. § 1983; (Count V) trespass, MICH. COMP. LAWS § 750.552; (Count VI) malicious prosecution, MICH. COMP. LAWS § 600.2907; (Count VII) abuse of process, MICH. COMP. LAWS § 750.369; and (Count VIII) unlawful arrest. ECF No. 1-1 at PageID.5–19; *see also Miner v. Schultz*, No. 21-651788-CZ (Mich. 34th Cir. Ct. 2021). Forty-one

---

MICH. COMP. LAWS § 750.377a(1)(d).

days later, Defendants removed the case to this Court, which exercised federal-question jurisdiction. ECF No. 1.

After a series of stipulations and dismissals, only Counts I, II, III, and V remain against Defendants Ogemaw and Reinke. ECF No. 36; *see* ECF Nos. 18; 28. Ogemaw and Reinke filed a motion to dismiss those four counts, ECF No. 30, and a motion to bar four of Plaintiff's witnesses from testifying, ECF No. 39, which were both denied, *Miner v. Ogemaw Cnty. Rd. Comm'n*, No. 1:21-CV-11192, 2022 WL 957534, at *10 (E.D. Mich. Mar. 29, 2022).

Plaintiff has since filed a motion for summary judgment on Counts I, II, and V. ECF. No 47, to which Defendants have responded, ECF No. 51; 54, and Plaintiff has replied, ECF No. 53.

Similarly, Defendants have filed a cross-motion for summary judgment on Counts I, II, III, and V, ECF No. 48, to which Plaintiff has responded, ECF No. 51, and Defendants have replied, ECF No. 55.

Counts I, II, III, and V will be addressed in turn in Part II. As explained hereafter, Plaintiff will prevail as a matter of law with respect to Counts I, II, and V, and a genuine question of material fact remains with respect to Count III.

## II.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The nonmovant must show more than "some metaphysical doubt as

to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the "mere existence of a scintilla of evidence" in support of the nonmovant does not establish a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252.

The court must review the evidence and draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

Summary judgment will be granted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). The standard is the same when "the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### A.

In Count I, Plaintiff alleges takings under the United States Constitution. ECF No. 3 at PageID.64–65 (citing U.S. CONST. amend. V, cl. 4).[4] In Count II, he alleges takings under the Michigan Constitution. *Id.* at PageID.66–67 (citing MICH. CONST. art. X, § 2).[5] Specifically,

---

[4] The Fourteenth Amendment to the United States Constitution "bars" state governments "from depriving a person of 'life, liberty, or property' without 'due process of law.'" Bradford C. Mank, *Can Judges Use Due Process Concepts in* Obergefell *to Impose Judicial Regulation of Greenhouse Gases and Climate Change?: The Crucial Case of* Juliana v. United States, 7 BELMONT L. REV. 277, 279 n.8 (2020).

[5] "The 2006 amendment to the Michigan constitution restricted the state's taking power. . . . to take private property for economic revitalization and community enhancement." James A. Martone, Note, *Rethinking Eminent Domain in Michigan*, 58 WAYNE L. REV. 537, 539 (2012).

Plaintiff contends Defendants committed an unconstitutional taking by "installing and maintaining a metal drain pipe (the Culvert) on [his] property, entering onto [his] property without permission or consent on various occasions to unblock or physically alter or maintain the Culvert, and by diverting the natural flow of surface water onto [his] property"—all without paying him just compensation. ECF No. 47 at PageID.512.

## 1.

Defendants assert there is a prescriptive drainage easement for the culvert, thus, defeating Plaintiff's claims. ECF No. 48 at PageID.640. Defendants have the burden of proving a prescriptive easement. *Marlette Auto Wash, LLC v. Van Dyke SC Props.*, 912 N.W.2d 161, 170 (Mich. 2018) (en banc). Therefore, Defendants must demonstrate "use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Mulcahy v. Verhines*, 742 N.W.2d 393, 397 (Mich. Ct. App. 2007) (per curiam) (first quoting *Plymouth Canton Cmty. Crier, Inc. v. Prose*, 619 N.W.2d 725, 726 (Mich. Ct. App. 2000); and then citing MICH. COMP. LAWS § 600.5801(4))).

But that theory is not supported by the evidence. Reid purchased his parcel in 2018 at the earliest, four years at most. *See* ECF No. 47 at PageID.560–61. So he could not have a prescriptive drainage easement unless by succession from his parcel's former owner. Yet—far from filling a prescription—Defendants have not offered any evidence demonstrating that someone owned Reid's parcel for 15 continuous years. Defendants have also not offered any evidence of Ogemaw's purported prescriptive drainage easement. Yet this court will presume that Ogemaw had a prescriptive easement. *See Toth v. Charter Twp. of Waterford*, 274 N.W.2d 7, 9–10 (Mich. Ct. App. 1978) (discussing county drain commissioners' statutory jurisdiction, rights, and release of rights over "drains within their respective counties").

- 8 -

Even if Ogemaw had a prescriptive drainage easement, Ogemaw abandoned it. Under Michigan's doctrine of common-law abandonment, county road commissions "can abandon a public right-of-way," including drainage easements. *See Wolf v. Kalkaska Cnty. Rd. Comm'n*, No. 355746, 2022 WL 3692259, at *9 (Mich. Ct. App. Aug. 25, 2022) (per curiam) (unpublished); *Wamsley v. Cheboygan Cnty. Rd. Comm'n*, No. 309802, 2013 WL 3717781, at *6 (Mich. Ct. App. July 16, 2013) (holding that private parties may acquire title over right of way under common-law theory of abandonment against county road commissions); *see also Gardens of Rest v. Upper Mich. Power & Light Co.*, 33 N.W.2d 741, 742 (Mich. 1948) (en banc) ("A highway may cease to be such by voluntary abandonment and non-use." (citing *Meyer v. Meldrum*, 211 N.W. 658, 659 (Mich. 1927) (en banc))).

Counties abandon prescriptive easements by mere nonuse for 15 years. *See McDonald v. Sargent*, 13 N.W.2d 843, 844 (Mich. 1944) (holding that a prescriptive easement is abandoned by "no more than an unopposed, continuous trespass for 15 years"); *accord Higgs v. Ramon*, No. 321102, 2015 WL 2091751, at *3 (Mich. Ct. App. May 5, 2015) ("[A]bandonment of a prescriptive easement requires showing non-use for at least 15 years." (citing *Cook v. Grand River Hydroelectric Power Co.*, 346 N.W.2d 881, 884 (Mich. Ct. App. 1984))); *see also Feldman v. Monroe Twp. Bd.*, 216 N.W.2d 628, 630 (Mich. Ct. App. 1974); JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS & LICENSES IN LAND § 10:19 (2022) (noting that Michigan has "created an exception to this principle for prescriptive easements, recognizing that such easements are terminated by abandonment when nonuse lasts for the period of prescription").

Specifically, a county abandons a prescriptive easement if the easement's only purpose has not been effectuated for 15 years. *MacLeod v. Hamilton*, 236 N.W. 912, 913 (Mich. 1931) ("The grant was of an easement for drainage purposes only, and when the contemplated purpose was

abandoned by establishment of the drain elsewhere the right of way ceased and the easement was but a cloud."); *see also Cook v. Sellers*, No. 351125, 2021 WL 297459, at *7 (Mich. Ct. App. Jan. 28, 2021) (finding that defendant abandoned easement "for roadway purposes" due to "the lack of any evidence that the [defendant] ever used the purported easement" for that purpose).

Defendants did not effectuate the culvert's purpose for 21 years. The only purpose that Defendants provided for the easement is "drainage." ECF No. 48 at PageID.640. But, as former Lot 4 owner Krzysztof Murawski testified, the culvert was blocked with concrete when he purchased Lot 4 in 1997. ECF No. 52-2 at PageID.1171, 1172; *see also* ECF No. 51 at PageID.818. The culvert remained blocked with concrete for 21 years—until Reid unblocked it right after he purchased and moved onto his parcel in 2018. *See* ECF Nos. 47 at PageID.577–78, 581, 600, 601, 603 (statement of Lot 1 owner Steven C. Spurlock); 52-2 at PageID.1172–75 (statement of Krzysztof Murawski); *see also* ECF No. 47 at PageID.535–36 (statement of Patrick Reinke) (stating Ogemaw has no "record of that culvert being touched during [the 2005] reconstruction" of Sage Lake Road). Moreover, Defendants' 2005 rebuild of Sage Lake Road without unblocking the culvert demonstrates Ogemaw's intent to abandon any such easement. *Ambs v. Kalamazoo Cnty. Rd. Comm'n*, 662 N.W.2d 424, 434–35 (Mich. Ct. App. 2003) ("[O]bstructions . . . placed on the right-of-way claimed to be established for public use" may be used "as evidence of the [government's] intent to abandon use of the right of way." (citing *Meyer v. Meldrum*, 211 N.W. 658, 658–59 (Mich. 1927))).

Thus, even if there was a prescriptive drainage easement, Ogemaw abandoned it by 2012—when the only purpose of the culvert had not been effectuated for at least 15 years. *Terlecki v. Stewart*, 754 N.W.2d 899, 911 (Mich. Ct. App. 2008) (per curiam) ("Also, a prescriptive flowage

easement may be lost by a 15-year period of continuous nonuse." (citing *Cook v. Grand River Hydroelectric Power Co.*, 346 N.W.2d 881, 884 (Mich. Ct. App. 1984))).

For these reasons, Defendants have no prescriptive easement.

**2.**

Defendants also insert Michigan's natural-flow doctrine. *See* ECF No. 48 at PageID.640. Under the natural-flow doctrine, "the lower and servient estate must receive the surface waters which flow naturally from the dominant estate." *Cranson v. Snyder*, 100 N.W. 674, 676 (Mich. 1904).

But the natural-flow doctrine does not impair Plaintiff's case because this case involves the flow of water caused by Sage Lake Road and a man-made culvert. *Id.* ("[H]e could not by *artificial drains* or ditches collect waters from these receptacles and cast them in a body upon the adjoining land" (emphasis added)); *see also Wiggins v. City of Burton*, 805 N.W.2d 517, 538 (Mich. Ct. App. 2011) (per curiam) ("[T]he dominant estates in the present case have no right to cast upon the [servient] parcel more surface water than would naturally flow to it.").

Further, the natural-flow doctrine does not justify the culvert because there is no evidence that, while the culvert was blocked, water from Reid's land naturally washed "over" Sage Lake Road onto Lot 4. *Bennett v. Eaton Cnty.*, 65 N.W.2d 794, 798 (Mich. 1954) (en banc) ("[P]ublic authorities may construct sluiceways in the direction of natural flow of surface water and thereby permit water, that would in the natural state pass over the highway, to pass under the highway onto the lands of the lower owner." (citing *Tower v. Somerset Twp.*, 106 N.W. 874, 877 (Mich. 1906))). Indeed, the only relevant evidence in the record demonstrates the exact opposite. No water traveled over Sage Lake Road from Reid's parcel to Lot 4 while the culvert was blocked; it traveled down

the "side" of a "ditch" further west. *See* ECF Nos. 52-2 at PageID.1172–75; 47 at PageID.577–78, 581, 600, 601, 603.

Thus, Plaintiff is entitled to "compensation" from Defendants for the culvert's diversion of water onto his land. *Bennett*, 65 N.W.2d at 798 (holding that "public authorities" have no "right to divert surface water, that would in the natural state disperse over a large area, and cast such in concentrated form upon the lands of the abutting owner to his damage without compensation to him").

### 3.

Defendants next assert Plaintiff's takings claims are time-barred. ECF No. 48 at PageID.639–43.

The statute of limitations for both claims is six years. State law determines the statute of limitations for § 1983 inverse-condemnation claims. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Michigan inverse-condemnation claims have a six-year statute of limitations under Michigan Compiled Laws § 600.5813. *Hart v. City of Detroit*, 331 N.W.2d 438, 444–45 (Mich. 1982) ("[T]his cause of action may be logically conceptualized as a personal action which arises in relation to a former interest in real property." (citing *Schreiber v. Loew's Inc.*, 147 F. Supp. 319, 322 (W.D. Mich. 1957))).

Generally, the statute of limitations "starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *McNamara v. City of Rittman*, 473 F.3d 633, 639 (6th Cir. 2007) (quoting *Kuhnle Bros. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)); *see also id.* at 637 (holding that federal—not state—law determines when the statute of limitations begins to accrue).

In "continuing violation" cases, however, the statute of limitations does not accrue "until the wrong is abated." *Herrin v. Dunham*, 481 F. Supp. 2d 854, 858 (E.D. Mich. 2007) (quoting *Sable v. Gen. Motors Corp.*, 90 F.3d 171, 176 (6th Cir. 1996)). A "continuing violation" exists if (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided. *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (first citing *Kuhnle Bros.*, 103 F.3d at 521; and then citing *McNamara*, 473 F.3d at 639).

This is a "continuing violation" case. Defendants' wrongful conduct is the physical trespass of the culvert onto Plaintiff's land after they unblocked it—not its initial installation or the intermittent flooding that it allegedly causes. *Herrin*, 481 F. Supp. 2d at 858 ("A continuing wrong is established by continuing tortious acts, not by continual harmful effects from an original, completed act." (quoting *Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004))); *accord Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). This physical trespass newly accrues "each day." *Kuhnle Bros.*, 103 F.3d at 522 ("[E]ach day that the [culvert] remained in effect, it inflicted 'continuing and accumulating harm' on [Plaintiff]." (quoting *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968))). And if the culvert was removed from Plaintiff's land, then further injury—the trespass—would be avoided. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1567 (6th Cir. 1997) (Krupansky, J., dissenting) ("[T]he defendant's continual unlawful act was his failure to extract tangible, moveable matter from the plaintiff's real estate which he (the defendant) at all times had a duty to remove." (citing *Boll v. Grifith*, 535 N.E. 2d 1375 (Ohio Ct. App. 1987))).

There is no question that the culvert trespassed onto Plaintiff's land on December 17, 2021. Although Defendants are correct that the culvert "no longer extends 6' onto Plaintiff's property,"

ECF No. 48 at PageID.642, their land survey demonstrates that the culvert trespassed onto Plaintiff's land by 0.33 feet on December 17, 2021, *see* ECF No. 48-2 at PageID.763 ("15" [corrugated metal pipe] is 0.33'± South of [the right-of-way]."). Further, Reinke testified that the culvert trespassed at least six feet onto Plaintiff's land as early as 2017. ECF No. 47 at PageID.527, 528, 534. In addition, employees of Ogemaw County acknowledged not only that the culvert was trespassing onto Plaintiff's "private property" on October 27, 2017, but also that they returned to Plaintiff's property to unblock the culvert on July 13, 2020. ECF No. 30-2 at PageID.343–44. For Plaintiff's part, his land survey demonstrates that the culvert trespassed onto his land by 0.3 feet as of April 8, 2021. ECF No. 25-1 at PageID.282.

Plaintiff's takings claims are timely because he filed them eight months before the statute of limitations even began to run. The six-year limit accrued on December 17, 2021, and Plaintiff filed his takings claims in state court on April 15, 2021. *See* ECF No. 1-1 at PageID.5–19.

In this way, Plaintiff is entitled to money damages for any harm to his property that the trespassing culvert proximately caused from June 8, 2020 to April 15, 2021. *Kuhnle Bros. v. Cnty. of Geauga*, 103 F.3d 516, 522–23 (6th Cir. 1997) (limiting damages to the "period permitted by the applicable statute of limitations" before the suit was filed). The damages seemingly began to run on January 3, 2020, when Defendants admittedly "removed the blockage from the culvert" for the first time. ECF No. 30-2 at PageID.343. But Plaintiff bought Lot 4—the only lot on which the culvert trespasses—on June 8, 2020. ECF No. 30-2 at PageID.338–39.

**4.**

Defendants next assert Plaintiff's Michigan takings claim fails for lack of both causation and diminution in his property value. ECF No. 48 at PageID.643–44.

"[A] diminution in the value of the property *or a partial destruction* can constitute a 'taking.'" *Mays v. Governor of Mich.*, 954 N.W.2d 139, 148 (Mich. 2020) (emphasis added) (quoting *Merkur Steel Supply Inc. v. City of Detroit*, 680 N.W.2d 485, 492 (Mich. Ct. App. 2004)).

"[A] plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages." *Id.* (quoting *Hinojosa v. Dep't of Nat. Res.*, 688 N.W.2d 550, 557 (Mich. Ct. App. 2004) (per curiam)). "Government actions directed at a plaintiff's property must have "the effect of limiting the use of the property.'" *Id.* (quoting *Charles Murphy M.D., P.C. v. City of Detroit*, 506 N.W.2d 5, 7 (Mich. Ct. App. 1993)). "[A]ll of the [defendants'] actions in the aggregate, as opposed to just one incident, must be analyzed to determine the extent of the taking." *Id.* (quoting *Merkur Steel*, 680 N.W.2d at 492).

As a threshold matter, Defendants' constant physical occupation of Plaintiff's land (i.e., the culvert) is a per se taking. *See Gym 24/7 Fitness, LLC v. State*, No. 355148, 2022 WL 982050, at *9 (Mich. Ct. App. Mar. 31, 2022) ("And the government likewise effects a physical taking when it occupies property—say, by recurring flooding as a result of building a dam."). For this "clearest sort of taking," "the government must pay [just compensation] for what it takes." *Id.*

Moreover, inverse condemnation can occur even without "actual physical occupancy, acquisition, or appropriation." *Faulknor v. Dalton Twp.*, No. 284340, 2009 WL 1440758, at *2 (Mich. Ct. App. May 21, 2009) (per curiam) (unpublished) (quoting *In re Va. Park*, 328 N.W.2d 602, 605 (Mich. Ct. App. 1982) (per curiam)). In such a case, the plaintiff "must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Blue Harvest, Inc. v. Dep't of Transp.*, 792 N.W.2d 798, 805 (Mich. Ct. App. 2010) (citing *Hinojosa*, 688 N.W.2d at 557). The plaintiff must also demonstrate "an injury that is different in kind, not

- 15 -

simply in degree, from the harm suffered by all persons similarly situated." *Spiek v. Mich. Dep't of Transp.*, 572 N.W.2d 201, 209 (Mich. 1998).

Plaintiff has also proven inverse condemnation under this second theory. Defendants abused their legitimate power because they entered Plaintiff's land without a warrant under the guise of an easement. *See Fruman v. City of Detroit*, 1 F. Supp. 2d 665, 679 (E.D. Mich. 1998) (holding that a city "abused its legitimate powers" under Michigan law when it "continued to conduct [unauthorized] appraisals on the property for the purpose of obtaining (and demolishing) the property"); *see also* ECF No. 30-2 at PageID.343 ("The problems are off our right of way and on private property which will need to be taken care of by [Plaintiff]."). Defendants affirmatively acted and caused the damage to Plaintiff's property by cutting and unblocking the culvert, which physically trespasses onto and floods his property. And his injury is unique because a neighboring landowner of higher elevation is not experiencing the flooding, which obviously is "different in kind." *Spiek*, 572 N.W.2d at 207 ("Thus, only the plaintiff uniquely affected by the physical invasion of frequent low-flying aircraft will recover for a taking, while those suffering merely the normal inconveniences of modern air travel over their lands at higher altitudes will not recover.").

The trespassing culvert and its flooding caused damage to Plaintiff's property. For determining the extent of the damage, however, "[n]o exact formula exists." *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 442 (Mich. Ct. App. 2009) (per curiam). But, contrary to Defendants' position, the damages question is not whether the physical trespass decreased the overall value of Plaintiff's property; it is whether the physical trespass caused a decline in the value of Plaintiff's property during the physical trespass, which would include the effect of any temporary flooding. That is, even if the overall property value increased during the physical trespass, the property's value diminished if it would have been higher without the trespass.

- 16 -

There is no question that the physically trespassing drain culvert has caused some diminution in the value of Plaintiff's property. Photographs of Plaintiff's property demonstrate that water floods then freezes nearly all the land surrounding his house, rendering the use and enjoyment of his property practically scant, if anything. *See* ECF Nos. 48-2 at PageID.765–69; 52-2 at PageID.1177–81. Defendants have made no attempt to demonstrate that the flooding—foreseeable based on Plaintiff's repeated complaints and blocking in addition to Defendants' repeated unblocking—will not occur again in the future. *See Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 39 (2012).

For these reasons, Defendants have committed an unconstitutional taking of Plaintiff's real property under the Michigan Constitution. Accordingly, with respect to Count II, Defendants' Motion for Summary judgment will be denied, and Plaintiff's Motion for Summary Judgment will be granted. Damages for the Michigan takings claim remain to be determined.

**5.**

Among other issues resolved above, Plaintiff contends that Defendants have unconstitutionally taken his land under the Fifth Amendment to the United States Constitution. ECF No. 47 at PageID.512–17.

"[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019). The Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V, cl. 4. "If a local government takes private property without paying for it, [then] that government has violated the Fifth Amendment . . . . [a]nd the property owner may sue the government at that time in federal court for the

'deprivation' of a right 'secured by the Constitution.' *Knick*, 139 S. Ct. at 2170 (quoting 42 U.S.C. § 1983).

As explained above, there is no question that Defendants' culvert physically trespassed onto and flooded Plaintiff's real property from June 8, 2020 to April 15, 2021. *See* discussion *supra* Section II.A. The trespass is an unconstitutional taking under the United States Constitution entitling Plaintiff to just compensation. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) ("Our cases establish that even a minimal 'permanent physical occupation of real property' requires compensation under the Clause." (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427 (1982))); *see also Knick*, 139 S. Ct. at 2179 (Thomas, J., concurring) ("[A] violation of [the Takings] Clause occurs as soon as the government takes property without paying for it.").

For these reasons, Defendants have committed an unconstitutional taking of Plaintiff's real property under the United States Constitution. Accordingly, with respect to Count I, Defendants' Motion for Summary judgment will be denied, and Plaintiff's Motion for Summary Judgment will be granted. Damages remain to be determined.

**B.**

In Count III, Plaintiff contends Defendants violated his "due process" rights under the Fourteenth Amendment to the United States Constitution. ECF No. 1-1 at PageID.13 (citing U.S. Const. amend. XIV, § 1, cl. 3). Specifically, Plaintiff states he has a "vested title or easement right" "to block the culvert and [to] prevent the flowage of surface water onto his property from the opposite side of Sage Lake Road," which Defendants violated by trespassing onto his land and cutting and unblocking the culvert "for the private benefit of Robert Reid." *See* ECF No. 51 at PageID.820 & n.4. Similarly, Plaintiff possesses "the right to quiet enjoyment and use of their property, the right to exclude others from their property, and their right to notice and hearing before

these rights are infringed." *Friend v. New Lexington Tree Farm, LLC*, No. 2:18-CV-00198-KAJ, 2018 WL 6436097, at *4 (S.D. Ohio Dec. 7, 2018).

"The Sixth Circuit permits a plaintiff to assert substantive and procedural due process claims in addition to a Fifth Amendment takings claim." *Friend v. New Lexington Tree Farm, LLC*, No. 2:18-CV-198, 2018 WL 4334593, at *5 (S.D. Ohio Sept. 11, 2018) (citing *Montgomery v. Carter Cnty.*, 226 F.3d 758, 768 (6th Cir. 2000)); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008) (holding that a plaintiff who seeks "equitable relief" brings a "substantive due process claim" that "is not ancillary to [any] takings claim" seeking just compensation); *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005) (distinguishing "just compensation" takings claims from "substantive due process [takings] claims").

Because Defendants have no easement authorizing the culvert, *see* discussion *supra* Section II.A.1, Plaintiff has a "protected property interest." *Friend*, 2018 WL 6436097, at *4.

Defendants assert (1) Plaintiff's "substantive due process"[6] claim fails because "there is no evidence that the culvert on his property, or the drainage easement in which it is located, was established for anyone's private use," ECF No. 48 at PageID.645, (2) there is no basis for Ogemaw County's *Monell* liability, *id.* at PageID.646–47, and (3) Reinke is entitled to qualified immunity, *id.* at PageID.647–49.

---

[6] Under the doctrine of substantive due process, courts inquire "whether . . . a governmental action . . . impermissibly infringes a substantive liberty interest." H. Jefferson Powell, *John Marshall Harlan and Constitutional Adjudication: An Anniversary Rehearing*, 9 BELMONT L. REV. 62, 148 n.18 (2021). By contrast, under the doctrine of procedural due process, courts inquire whether the government "afford[ed] someone adequate procedures before depriving him or her of life, liberty or property." *Id.*

.

**1.**

Contrary to Defendants' argument, there is a question of fact as to the culvert's purpose.

The key facts reasonably demonstrating a private taking are that:

(1) The culvert was blocked from 1997 until the day after Reid moved in and unblocked it, ECF No. 51 at PageID.816 (quoting ECF No. 51 at PageID.922–93);
(2) Reid and Reinke are government employees, ECF Nos. 30-2 at 348; 47 at PageID.509
(3) Reid and Reinke personally texted each other and shared photos about Plaintiff blocking the culvert, ECF No. 48-2 at PageID.789; and
(4) Defendants have offered no evidence that the culvert serves any purpose other than preventing flooding on Reid's land.

Indeed, Defendants suggest the culvert's purpose is to be a "drainage easement," which arguably benefits Reid's land only, *see* ECF No. 48 at PageID.640, which is a private taking, *see also id.* at PageID.646 ("[T]he only reasons for Defendant Reinke needing to access the property concerns the upkeep and maintenance of the county managed culvert."); *Kelo v City of New London*, 545 U.S. 469, 491 (2005) (Kennedy J. concurring) ("A court . . . should strike down a taking that, by a clear showing, is intended to favor a particular party, with only incidental or pretextual public benefits . . . ." (citations omitted)).

Yet there is also evidence of a public use. A taking is "for public use" if there "is a rational relationship to some 'conceivable public purpose.'" *Montgomery v. Carter Cnty.*, 226 F.3d 758, 765 (6th Cir. 2000) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984)). Such a purpose exists here: "the federal aid project to improve the Sage Lake Road public right-of-way." ECF No. 48 at PageID.645 (citing ECF No. 48-2 at PageID.733). Ogemaw adds that the current purpose of the culvert is "drainage," *see id.* at PageID.640, which is rationally related to improving the roadway. Moreover, though Reid unblocked the culvert first, Ogemaw did not unblock the culvert until after Plaintiff brought Ogemaw's attention to the culvert—before Reid ever contacted Reinke. *Compare* ECF No. 30-2 at PageID.343 (demonstrating that Ogemaw first unblocked the

culvert on January 3, 2020); *with id.* at PageID.385 (demonstrating that Reid texted Reinke on November 22, 2020).

For these reasons, Defendants' Motion for Summary Judgment will be denied with respect to Count III. Yet the merits of Defendants' other arguments against Count III will be addressed below. *See Miner v. Ogemaw Cnty. Rd. Comm'n*, No. 1:21-CV-11192, 2022 WL 957534, at *10 (E.D. Mich. Mar. 29, 2022) ("Sixth Circuit policy 'values the disposition of cases on their merits.'" (quoting *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006)); discussion *infra* Sections II.B.2, II.B.3.

## 2.

The next issue is whether Ogemaw County had a policy or custom such that it may be held liable for the conduct of employees who cut and unblocked the culvert. Because § 1983 "does not permit a municipal entity to incur liability under a theory of respondeat superior," *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), "[a] plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury," *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 690–91). For purposes of § 1983, a "policy" includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality]," *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (quoting *Monell*, 436 U.S. at 690–91), and "custom" refers to "a legal institution that is permanent and established, but is not authorized by written law," *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Monell*, 436 U.S. at 691).

Defendants believe "there is no basis upon which to impose liability upon the Road Commission as a governmental entity for an alleged violation of Plaintiff's substantive due process rights." ECF No. 48 at PageID.647. Indeed, Plaintiff has offered no evidence of a policy. *See Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 502 (W.D. Ky. 2021) (requiring plaintiff "to 'show that there were "formal rules or understandings—often but not always committed to writing—that [are] intended to, and [do], establish fixed plans of actions to be followed under similar circumstances consistently and over time.'" (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019)).

But Defendants acknowledge that "Reinke needing to access the property concerns the upkeep and maintenance of the county managed culvert." ECF No. 48 at PageID.646. Drawing all reasonable inferences in Plaintiff's favor, such necessary upkeep and maintenance is a custom of the Ogemaw County Road Commission requiring entry onto people's private property to cut and to unblock drain culverts, which leaves it potentially liable under *Monell*. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 941–42 (M.D. Tenn. 2012) (requiring plaintiff to "show that [government] has (1) an unwritten custom (2) of remaining deliberately indifferent (3) to a clear and persistent pattern of illegal uses of force and seizures (4) that it knew or should have known about." (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005))).

For these reasons, there is a question of fact with respect to Ogemaw County's *Monell* liability.

### 3.

The next issue is whether Reinke is entitled to qualified immunity from Plaintiff's substantive-due-process claim. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar

- 22 -

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In resolving a government official's qualified immunity claims, courts look to whether (1) the facts that the plaintiff has alleged demonstrate the violation of a constitutional right (2) that was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Reinke is not entitled to qualified immunity. As explained above, there is no question that Defendants violated Plaintiff's constitutional right to be free from unconstitutional governmental takings. *See* discussion *supra* Sections II.A. Moreover, for more than 40 years, the Supreme Court has "clearly establish[ed] that permanent occupations of land by such installations as telegraph and telephone lines, rails, and underground pipes or wires are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 430 (1982) (collecting cases). No doubt, a drain culvert is such an "installation."

For these reasons, Defendants' Motion for Summary Judgment will be denied with respect to Count III.

## C.

With respect to Plaintiff's common-law trespass claim, Defendants argue (1) Ogemaw County is entitled to governmental immunity, (2) Reinke is entitled to governmental immunity, and (3) the claim is time-barred. ECF No. 48 at PageID.649–58.

## 1.

Defendants argue governmental immunity bars Plaintiff's Michigan trespass claim. *See* ECF No. 48 at PageID.649–55. Specifically, Defendants claim that Michigan Compiled Laws §

- 23 -

691.1401 *et seq.*[7] immunizes Ogemaw, and that Michigan Compiled Laws § 691.1407(5)[8] immunizes Reinke. *Id.*

Political subdivisions of the State of Michigan, like Ogemaw, enjoy immunity from tort liability under the Governmental Tort Liability Act (GTLA), MICH. COMP. LAWS § 691.1401 *et seq. See* MICH. COMP. LAWS § 691.1401(d) (defining "governmental agency" as "the state or a political subdivision"). Under the GTLA, Ogemaw is immune from tort liability "unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Mack v. City of Detroit*, 649 N.W.2d 47, 52 (Mich. 2002). The GTLA permits a cause of action to be brought against a governmental agency for money damages in only six discrete areas, none of which apply here. *See Lash v. City of Traverse City*, 735 N.W.2d 628, 637 n.33 (Mich. 2007) (listing the other five exceptions).

Yet Plaintiff may seek "injunctive relief" under Michigan Compiled Laws § 3.310 or "declaratory relief" under Michigan Compiled Laws § 2.605(A)(1). *Lash v. Traverse City*, 735 N.W.2d 628, 638 (Mich. 2007); *see also Morley v. Twp. of Bangor*, No. 340636, 2019 WL 1867640, at *7 (Mich. Ct. App. Apr. 25, 2019) (unpublished) (per curiam) ("An action to abate a nuisance is 'equitable in nature.'" (quoting *Ypsilanti Charter Twp. v. Kircher*, 761 N.W.2d 761

---

[7] The Governmental Tort Liability Act states, "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MICH. COMP. LAWS § 691.1401 *et seq.*
[8] Under Michigan Compiled Laws § 691.1407(5):

> To qualify for absolute immunity from tort liability an individual governmental employee must prove his or her entitlement to immunity by establishing, consistently with the statute's plain language, (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority.

*Petipren v. Jaskowski*, 833 N.W.2d 247, 254 (Mich. 2013).

(Mich. Ct. App. 2008))). In this way, Ogemaw is not immune from Plaintiff's trespass claim if he seeks declaratory or injunctive relief.

Defendants correctly note that Michigan courts look to the relief sought to determine whether immunity applies, and that Plaintiff seeks more than equitable relief. See ECF No. 48 at PageID.651.

But Defendants are not correct that injunctive or declaratory relief would require Ogemaw to expend funds. An injunction could, for example, prevent the Road Commission from trespassing onto Plaintiff's real property without a warrant. And a declaration could state, for example, that Defendants have illegally trespassed onto Plaintiff's real property without a warrant. Neither of those solutions would require Ogemaw County to spend a cent.

For these reasons, Ogemaw is not entitled to immunity from Plaintiff's trespass claim.

**2.**

The same analysis applies to Defendant Reinke's claim for absolute immunity under Michigan Compiled Laws § 691.1407(5).

Defendants stretch the language of § 691.1407(5) to argue that Reinke is the "highest appointive executive official of a level of government." See ECF No. 48 at PageID.653. One of the cases that Defendants cite belie their claim. In *Nalepa v. Plymouth-Canton Community School District*, the Michigan Court of Appeals interpreted § 691.1407(5)'s "level of government" language to include a school district because it (1) "like a county, township, or city, encompasses a defined geographical area," (2) "has the power to levy taxes," (3) "has the power of eminent domain," (4) makes decisions that "have a wide effect on the community not unlike decisions made by other political subdivisions," and (5) has a "board" that "is elected by the voters who live in the school district." *Nalepa v. Plymouth-Canton Cmty. Sch. Dist.*, 525 N.W.2d 897, 901 (Mich. Ct.

- 25 -

App. 1994), *aff'd on other grounds sub nom. Nalepa v. Encyclopedia Britannica Educ. Corp.*, 548 N.W.2d 625 (Mich. 1995). But Defendants have made no attempt to demonstrate that the Ogemaw County Road Commission has any of those features. Drawing all reasonable inferences in Defendant's favor, a road commission is nothing like a school board, county, township, or city.

Accordingly, Reinke is not entitled to absolute immunity as a matter of law under Michigan Compiled Laws § 691.1407(5).

Moreover, Reinke is subject to money damages for trespass. Although municipalities are immune from money damages for intentional torts, *Pohutski v. City of Allen Park*, 641 N.W.2d 219, 229 (Mich. 2002) ("[T]he plain language of the governmental tort liability act does not contain a trespass-nuisance exception to governmental immunity [for municipal corporations]." (citing MICH. COMP. LAWS § 691.1507(1))), the express language of § 691.1407(3) removes intentional torts—like trespass—the qualified immunity afforded to officers and employees of governmental agencies under § 691.1407(2), *see* MICH. COMP. LAWS § 691.1407(2), (3). Indeed, the Michigan Supreme Court has expressly interpreted § 691.1407(2) as "limited to negligent torts." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 223–24 (2008).

Under any measure, then, Reinke is not immune from Plaintiff's trespass claim.

**3.**

Finally, Defendants assert Plaintiff's trespass claims are time-barred by a three-year statute of limitations for "trespass-nuisance claims based on flooding of real property." *See* ECF No. 48 at PageID.655–57.

But Plaintiff's trespass claims are based on physical trespasses onto Lot 4 after he purchased it: the intermittent trespasses of Road Commission employees, including Patrick Reinke, and the ongoing trespass of the culvert after Defendants cut and unblocked it. As

- 26 -

Defendants acknowledge, those trespasses are the proximate cause of the flooding on Lot 4. *See* discussion *supra* Section II.B.1.

Michigan's statute of limitations for trespass is three years. *Terlecki v. Stewart*, 754 N.W.2d 899, 903 (Mich. 2008) (per curiam). The remaining questions, then, are (1) whether Plaintiff filed his trespass claims more than three years after the trespasses and (2) whether the trespasses occured after he purchased Lot 4.

None of Plaintiff's trespass claims are time-barred, and there is no genuine question of fact that Defendants trespassed onto Lot 4. Plaintiff purchased Lot 4 on June 8, 2020. ECF No. 30-2 at PageID.338. Reinke and other Road Commission employees entered Plaintiff's property to unblock the culvert on July 1, July 6, and July 13, 2020, *id.* at PageID.344 (stating that "Gary, Pat, Jake, RJ, and Luke were there" on "7/1/2020," and that "Gary, Pat, RJ, Kyle, and Kevin returned" on "7/6/2020"). As Defendants acknowledge, a substantially similar group also accompanied Reinke to cut the culvert on January 3, 2020. *Id.* at PageID.343. Plaintiff filed suit in April 2021— obviously within three years of his June 2020 purchase of Lot 4. *See* ECF No. 1-1 at PageID.5– 19. As explained above, they had no easement. *See* discussion *supra* Section II.A.1.

For these reasons, Defendants are liable not only for nominal and actual damages of the culvert's trespass as of June 8, 2020, but also for nominal and actual damages of their physical trespasses on July 1 , July 6, and July 13, 2020.

### D.

To summarize: (1) Counts I and II have been resolved in Plaintiff's favor as a matter of law. *See supra* Section II.A. (3) Count V has been resolved as a matter of law in Plaintiff's favor. *See supra* Section II.C. (3) Count III has a jury-triable question of fact as to the culvert's private or public purpose. *See supra* Section II.B.

**III.**

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 48, is **DENIED**.

Further, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 47, is **GRANTED**. Counts I, II, and V are resolved in Plaintiff's favor as a matter of law.

Further, it is **DECLARED** that Defendants have **VIOLATED** Plaintiff's constitutional rights by taking his property without just compensation in violation of the United States Constitution and the Michigan Constitution.

Further, it is **ORDERED** that Defendants are **ENJOINED** from trespassing onto Plaintiff's property for any purpose without a warrant, an exception to the warrant requirement, or further order of this Court.

**This is not a final order and does not close the case**.

Dated: September 2, 2022                              s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge